## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| INDYMAC BANK, F.S.B., a Federal Savings Bank, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 07 C 6226 |
| GANESAN VISVABHARATHY, an individual | ) ) ) | Judge Joan B. Gottschall |
| Defendant. | ) ) ) | |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S
### SUR-REPLY REGARDING DEFENDANT'S MOTION TO
### VACATE ORDER OF DEFAULT AND QUASH SERVICE

In response to the Sur-Reply of plaintiff, Indymac Bank, F.S.B. ("Indymac"), and in further support of his Motion to Vacate Order of Default and Quash Service, defendant, Ganesan Visvabharathy, states as follows:

### Introduction

Indymac's opposition to Dr. Visvabharathy's Motion to Vacate Order of Default and Quash Service has been obviated by Judge Guzman's ruling in a related matter, *Indymac Bank, F.S.B. v. Visvabharathy, et al.*, No. 07 C 6224 (the "Guzman Action"). (Judge Guzman's May 5, 2008 Order is attached as Exhibit A).[1] In that action, Judge Guzman received evidence and argument on the issue of Indymac's alleged substituted service on Dr. Visvabharathy at the

---

[1] As the Court has been previously advised, Indymac filed three contemporaneous actions against Dr. Visvabharathy arising out of three loan guarantees in connection with real estate projects in Florida. (*See* Memorandum in Support of Motion to Vacate Order of Default and Quash Service at 2-3). All three were delivered together by Indymac's process server at the same time to Dr. Visvabharathy's estranged wife at the Burr Ridge Residence on December 1, 2007. Indymac has indicated that it had intended to consolidate the actions, but elected instead to proceed with default proceedings in each when it saw no response following its purported act of service.

residence of his estranged wife, in Burr Ridge. The question there was identical to the one here, because Indymac's process server delivered process in the Guzman Action together with process in this action. After considering the testimony and documents presented to him, Judge Guzman ruled that the evidence was "overwhelming" that Dr. Visvabharathy did not reside at the Burr Ridge Residence at the time of purported substituted service. (Ex. A at 3). He therefore denied Indymac's motion for default, and directed that Indymac serve Dr. Visvabharathy at his residence in India if it wishes to proceed in that action against him. (*Id.*). Judge Guzman then dismissed Dr. Visvabharathy from the Guzman Action. (June 13, 2008 Order, attached as Exhibit B).

Indymac has now had a full and fair opportunity to litigate the question of whether its purported substituted service on Dr. Visvabharathy at the Burr Ridge Residence was effective. Accordingly, the doctrine of collateral estoppel bars Indymac from relitigating the issue here. In accordance with Judge Guzman's ruling, the purported substituted service here was identically ineffective, and the Order of Default in this matter should be vacated.

Even aside from collateral estoppel, the points raised in Indymac's Sur-reply are unpersuasive. Its baseless accusation that Dr. Visvabharathy included new matters in his Reply is rendered moot by the Court's permission to file the Sur-reply, and its request for discovery is likewise moot because it was able to take discovery in the Guzman Action, to no avail. Its final point, that it is possible for an individual to have multiple abodes, is similarly fruitless. Indymac has provided no basis for concluding that the Burr Ridge Residence was one of Dr. Visvabharathy's supposed multiple abodes – to the contrary, Judge Guzman found the evidence that Dr. Visvabharathy did not live there to be "overwhelming." (Ex. A at 3).

## Argument

**A.    Collateral Estoppel Precludes Indymac From Relitigating The Sufficiency Of Its Purported Substituted Service**

The procedural posture in the Guzman Action was slightly different, but the issue there was the same as here. Indymac alleged that it served Dr. Visvabharathy via his estranged wife at the Burr Ridge Residence on December 1, 2007, and moved for an order of default when Dr. Visvabharathy filed no responsive pleading. Dr. Visvabharathy learned of that action in time to file a response to the motion for default, and asserted that service was improper because the Burr Ridge Residence was not his abode at the time of supposed service. Judge Guzman set the matter for an evidentiary hearing solely on the issue of sufficiency of service. Indymac deposed Dr. Visvabharathy's witnesses (it presented none of its own), and the parties exchanged documentary evidence. The parties submitted their testimony, documentary evidence, and argument to Judge Guzman in written form. After considering the submissions, Judge Guzman ruled that the evidence was "overwhelming" that the Burr Ridge Residence was not Dr. Visvabharathy's abode at the time of supposed service, and dismissed Dr. Visvabharathy from the action. (Exs. A & B).

Collateral estoppel arises when (i) the issue sought to be precluded is the same as that involved in the other action; (ii) the issue was actually litigated in the other action; (iii) the determination of the issue was essential to the decision in the other action; and (iv) the party against whom estoppel is invoked must have been fully represented in the other action. *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir. 1987). The issue of proper service, when fully litigated, is an appropriate subject of collateral estoppel. *See, e.g., In re Nevels*, No. 06-3155, 2007 WL 2042449, at *11 (Bankr. E.D. Tenn. July 9, 2007) ("[T]he issue[] of ... sufficiency of service of process [was] fully litigated, and therefore, collateral estoppel applies

not only to the Judgment, but also with respect to whether or not the Debtor was properly served in the Sevier County Lawsuit.") (a copy of this unpublished decision is attached as Exhibit C).

All of the elements of collateral estoppel are present here. In the Guzman Action, Indymac asserted that it had properly served Dr. Visvabharathy by delivery to his estranged wife at the Burr Ridge Residence. This was the same purported act of service upon which Indymac relies here; indeed, its process server delivered process in this action and the Guzman action together. The first element of collateral estoppel is therefore met, because the same issue of service is presented here as in the Guzman Action. The second and third elements are met because the issue of service was not only "actually litigated" and "essential to the decision" in the Guzman Action, but was the *only* issue litigated and decided by Judge Guzman's Order. Finally, Indymac was fully represented in the Guzman Action, as it was itself the party arguing for sufficiency of service there, as here.

The question of whether Indymac made effective service on Dr. Visvabharathy has been fully and fairly litigated in front of Judge Guzman, who ruled that there was no effective service, denied Indymac's motion for default, and dismissed Dr. Visvabharathy from the action. Collateral estoppel mandates the same result here.

**B.      There Is No Basis To Find That The Burr Ridge Residence Was Dr. Visvabharathy's Abode**

Indymac argues that it is possible for an individual to have more than one abode. But this theoretical possibility does not aid Indymac, because even the courts recognizing that possibility have held that each asserted abode must still bear "sufficient indicia of permanence" to qualify as such. *In re Xacur*, 219 B.R. 956, 967 (Bankr. S.D. Tex. 1998); *Jaffe & Asher v. Van Brunt*, 158 F.R.D. 278, 280 (S.D.N.Y. 1994).

These courts, in order to find service at one of multiple abodes, relied on the fact that the defendant stayed at the address of service regularly, together with several additional indicia that the defendant treated it as a permanent abode. *See In re Xacur*, 219 B.R. at 960 (noting that defendant owned the condominium in question, spent 10% of the year there, and held a driver's license showing it as his home address); *Jaffee & Asher*, 158 F.R.D. at 280 (noting that defendant maintained a private bedroom and phone line at the address of service and, "equally as important," had previously represented to plaintiff itself that his was his residence).[2] By contrast, there is no indication here that Dr. Visvabharathy stayed regularly at his wife's home – indeed, the evidence presented to Judge Guzman was directly to the contrary – nor are there any other indicia that it was a permanent abode for Dr. Visvabharathy on December 1, 2007. Among other things, he was not living there, maintained no room or telephone line there for his regular use, and had no intention of returning to live there. In sum, there is no basis to find that Dr. Visvabharathy had multiple abodes on December 1, 2007, much less that his wife's Burr Ridge residence was such an abode.

---

[2] Indymac's reliance on *Blackhawk Heating & Plumbing Co. v. Turner*, 50 F.R.D. 144 (D. Ariz. 1970) is similarly misplaced. In *Blackhawk Heating*, the evidence showed that the defendant knew of the lawsuit, and took measures – including hastily moving out of his apartment – specifically to avoid service. *Id.* at 146. Here, Dr. Visvabharathy moved from the Burr Ridge Residence to La Grange long before this lawsuit, and there is no basis to conclude that either that move or his subsequent move to India (which also preceded this action) were done in an effort to avoid service. Moreover, the *Blackhawk Heating* court specifically noted that federal case authority held differently when substituted service was purportedly made on an estranged wife at her home. *Id.* at 149.

5

## Conclusion

WHEREFORE, defendant Ganesan Visvabharathy respectfully requests that this Court enter an Order vacating its January 17, 2008 order of default, quashing service, and awarding such other and further relief as the Court deems proper.

Respectfully submitted,

GANESAN VISVABHARATHY

By:  /s/ Daniel A. Shmikler
        One of his attorneys

Bruce S. Sperling
Daniel A. Shmikler
SPERLING & SLATER, P.C.
55 West Monroe Street, Suite 3200
Chicago, Illinois  60603
(312) 641-3200
(312) 641-6492 (fax)

6

# EXHIBIT A

Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 6224 | **DATE** | 5/5/2008 |
| **CASE TITLE** | Indymac Bank F.S.B. vs. Ganesan Visvabharathy, et al. | | |

**DOCKET ENTRY TEXT**

For the reasons set forth in this Order, Indymac's motion for an order of default against Ganesan Visvabharathy [doc. no. 13] is denied.

Docketing to mail notices.

| | Courtroom Deputy Initials: | LC/LM |
|---|---|---|

Indymac Bank F.S.B. has sued Ganesan Visvabharathy for his alleged breach of guaranty. The case is before the Court on plaintiff's motion for entry of an order of default against Visvabharathy.[1] For the reasons set forth below, the motion is denied.

"The Illinois Supreme Court has held that an affidavit of service constitutes prima facie evidence of proper service." *Torrespico v. Columbia Coll.*, No. 97 C 8881, 1998 WL 703450, at *5 (N.D. Ill. Sept. 30, 1998). Indymac has filed such an affidavit as to Visvabharathy, which says that he was served on December 1, 2007 by leaving a copy of the summons and complaint with his wife Suriya at his abode, 7529 Ridgewood Lane, Burr Ridge, Illinois 60527. (*See* Aff. Abode Serv.) That affidavit "will not be set aside unless [it] is impeached by clear and satisfactory evidence." *Id.* (quotation omitted).

Visvabharathy contends that he moved out of 7529 Ridgewood Lane in the summer of 2006 and, thus, it was not his abode on December 1, 2007 when he was purportedly served there. "There is a rebuttable presumption that the house where a man's wife and children reside is his usual place of abode." *United Bank of Loves Park v. Dohm*, 450 N.E.2d 974, 976 (Ill. App. Ct. 1983) (quotation omitted). Among the factors the Court considers to determine whether that presumption has been rebutted are:

> the state of the marriage at the time of service, the frequency of the husband's contacts with the house in which the family has been residing, the defendant's intent or lack of intent to abandon this residence permanently or to move his family elsewhere, whether the defendant has removed his personal belongings from this residence, the defendant's address for voter registration, driver's license, mail delivery and other purposes, and whether the wife and children continue to live at the residence.

*Id.*

The facts adduced in this case are sufficient to rebut the presumption. Both Visvabharathy and his wife, Suriya Sastri, testified that: (1) she filed for divorce in February 2006 (App. Exs. Visvabharathy's Mem. Supp. Resp. Mot. Default, Ex. A, Visvabharathy Dep. at 5; *id.*, Ex. B, Sastri Dep. at 10); (2) he moved out of the Burr Ridge house in the summer of 2006 (*id.*, Ex. A, Visvabharathy Dep. at 6; *id.*, Ex. B, Sastri Dep. at 10, 49); (3) for some time thereafter, he lived in an apartment at 400 South Catherine in LaGrange, Illinois (*id.*, Ex. A, Visvabharathy Dep. at 6-9; *id.*, Ex. B, Sastri Dep. at 13); (4) during the time he lived in LaGrange, Visvabharathy returned occasionally to the Burr Ridge home to pick up or visit his children and stayed there with the children for about a month at the end of 2006 while his wife was in India (*id.*, Ex. A, Visvabharathy Dep. at 7, 10; *id.*, Ex. B, Sastri Dep. at 10, 63-64); and (5) at some point during the fall of 2007, Visvabharathy moved in with his cousin at 196/8, Asiad Colony, Anna Nagar West, Chennai 600 101, India, which is where he was living on December 1, 2007 (*id.*, Ex. A, Visvabharathy Dep. at 14; *see id.*, Ex. B, Sastri Dep. at 93-94; Pl.'s Evidentiary Hr'g Br. Supp. Mot. Default, Ex. 8, Visvabharathy Aff. of 3/13/08 ¶ 5). Moreover, defendants have offered copies of utility bills addressed to Visvabharathy for services at the LaGrange apartment for August and September 2007 and receipts for appliance purchases Visvabharathy made in India in November and December 2007 that are addressed to him at the Chennai address. (*See* App. Exs. Visvabharathy's Mem. Supp. Resp. Mot. Default, Ex. A, Visvabharathy Dep., Exs. 1, 2 & 4.)

As plaintiff points out, these are not the only facts in the record. But the others do not dictate a different result. The facts, for example, that title to the Burr Ridge home remains in both Visvabharathy and Sastri's names and some of the utilities are still in Visvabharathy's name shed no light on whether he was living in the house on December 1, 2007, especially given the undisputed pendency of the divorce proceedings. (*See* Pl.'s Evidentiary Hr'g Br. Supp. Mot. Default, Ex. 9, Real Property Transaction Record.) Similarly innocuous is the couple's representation to the

---

[1]The Court previously granted Indymac's motion for an order of default against defendant Hawthorne Orlando Corporation. (*See* 4/15/08 Min. Order.)

divorce court in June 2006 that Visvabharathy was then living in the Burr Ridge home, given their testimony that he moved out later that summer. (*See id.*, Ex. 6, Cir. Ct. Order of 6/29/06.) The only facts that undermine Visvabharathy's contention are that he did not change his mailing address with the U.S. Postal Service after he moved from Burr Ridge and he left "some old clothes and books" there. (*See id.*, Ex. 2, Postmaster Aff.; App. Exs. Visvabharathy's Mem. Supp. Resp. Mot. Default, Ex. A, Visvabharathy Dep. at 9; *id.*, Ex. B, Sastri Dep. at 82.) However, given the otherwise overwhelming evidence that Visvabharathy was not actually living in the Burr Ridge home on December 1, 2007, those facts do not defeat his contention that it was not his abode on that date.

### Conclusion

For the reasons stated above, the Court finds that plaintiff did not properly serve Visvabharathy on December 1, 2007. Plaintiff's motion for an order of default as to Visvabharathy [doc. no. 13] is, therefore, denied. If plaintiff wishes to proceed against Visvabharathy, it must serve him at 196/8, Asiad Colony, Anna Nagar West, Chennai 600 101, India, which Visvabharathy has now said under oath is his current abode.

# EXHIBIT B

# UNITED STATES DISTRICT COURT
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.2.1**
**Eastern Division**

Indymac Bank, F.S.B.

         Plaintiff,

v.              Case No.: 1:07−cv−06224
               Honorable Ronald A. Guzman

Ganesan Visvabharathy, et al.

         Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, June 13, 2008:

  MINUTE entry before the Honorable Ronald A. Guzman:Status hearing held on 6/13/2008. Defendant Ganesan Visvabharathy is dismissed with leave to reinstate after the Bankruptcy stay is lifted. Motion for default judgment in sum certain to be renoticed as to the only remaining defendant. Mailed notice(cjg, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

# EXHIBIT C

Westlaw.

Not Reported in B.R.                                                Page 1
Not Reported in B.R., 2007 WL 2042449 (Bkrtcy.E.D.Tenn.)

In re Nevels
Bkrtcy.E.D.Tenn.,2007.
Only the Westlaw citation is currently available.
    United States Bankruptcy Court,E.D. Tennessee.
    In re Mary C. NEVELS a/k/a Mary C. Susong a/k/a
                  Connie N. Susong, Debtor.
    James Gibbs and wife, Sharon Gibbs, Plaintiffs
                         v.
            Mary C. Nevels, Defendant.
             **Bankruptcy No. 06-31265.**
             **Adversary No. 06-3155.**

                      July 9, 2007.

Stone & Hinds, P.C., George F. Legg, Esq. Mark E.
Brown, Esq., Knoxville, TN, for Plaintiffs.
Gail F. Wortley, Esq., Knoxville, TN, for Defend-
ant/Debtor.

*MEMORANDUM ON PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT*

RICHARD STAIR, JR., United States Bankruptcy
Judge.
*1 On September 18, 2006, the Plaintiffs filed the
Complaint of James and Sharon Gibbs Objecting to
the Dischargeability of a Debt of Mary C. Nevels
(Complaint), asking the court to declare a state
court judgment obtained against the Debtor in the
amount of $545,006 .30 nondischargeable under 11
U.S.C. § 523(a)(2)(A), (4), and/or (6) (2005). On
November 14, 2006, the Defendant/Debtor (Debtor)
filed an Answer to Objection to Discharge of Debt
(Answer), denying the Plaintiffs' allegations.

Presently before the court is the Motion for Sum-
mary Judgment by James and Sharon Gibbs
(Motion for Summary Judgment) filed by the
Plaintiffs on June 1, 2007. The Motion for Sum-
mary Judgment is accompanied by a Statement of
Undisputed Material Facts and memorandum of law
as required by E.D. Tenn. LBR 7056-1. Addition-
ally, the Plaintiffs rely upon the Affidavit of Mark

E. Brown and the following exhibits attached
thereto: (1) the Complaint initiating this adversary
proceeding; (2) the Debtor's Answer; (3) a Motion
to Amend Complaint and Motion for Service by
Publication filed by the Plaintiffs on July 3, 2003,
in case no. 02-3-112, styled *James Gibbs and wife,
Sharon Gibbs v. Rick L. Susong, Back to Basics,
Inc., and Mary Constance Nevels,* in the Chancery
Court for Sevier County, Tennessee (Sevier County
Lawsuit); (4) an Order entered in the Sevier County
Lawsuit on September 2, 2003, granting the July 3,
2003 Motion to Amend filed by the Plaintiffs; (5)
the Second Amended Complaint filed by the
Plaintiffs in the Sevier County Lawsuit on August
14, 2003; (6) a Summons filed by the Plaintiffs in
the Sevier County Lawsuit on August 25, 2003,
evidencing an attempt to serve the Debtor by certi-
fied mail; (7) an Affidavit of Publication filed by
the Plaintiffs in the Sevier County Lawsuit on Oc-
tober 16, 2003; (8) an Order entered in the Sevier
County Lawsuit on December 4, 2003, granting the
Plaintiffs a default judgment against the Debtor; (9)
a Motion to Set Aside Default Judgment filed by
the Debtor on January 8, 2004, in the Sevier County
Lawsuit; (10) the Plaintiffs' Response to Defendant,
Mary Constance Nevels' Motion to Set Aside De-
fault Judgment filed by the Plaintiffs on February 2,
2004, in the Sevier County Lawsuit; (11) the Reply
to Plaintiffs' Response to Motion to Set Aside De-
fault Judgment filed by the Debtor on February 5,
2004, in the Sevier County Lawsuit; (12) a Supple-
mental Affidavit of Mary Constance Nevels filed in
the Sevier County Lawsuit on February 5, 2004;
(13) an Order entered in the Sevier County Lawsuit
on February 19, 2004, denying the Motion to Set
Aside Default Judgment; (14) a Motion for Judg-
ment filed by the Plaintiffs on August 29, 2005, in
the Sevier County Lawsuit; (15) the Report of Spe-
cial Master filed on February 10, 2006, in the Sevi-
er County Lawsuit; (16) an Order entered on Febru-
ary 22, 2006, adopting the Report of the Special
Master and awarding the Plaintiffs a judgment
against the Debtor in the amount of $545,006.30 in

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in B.R.                                                    Page 2
Not Reported in B.R., 2007 WL 2042449 (Bkrtcy.E.D.Tenn.)

the Sevier County Lawsuit; (17) the Plaintiffs' Rule 60.02 Motion to Amend Order Entered on February 22, 2006, [to] Add Taxation of Costs filed by the Plaintiffs on March 31, 2006, in the Sevier County Lawsuit; (18) an Amended Order entered in the Sevier County Lawsuit on March 31, 2006, amending the February 22, 2006 Order to include the taxing of costs against the Debtor (Judgment); and (19) a Memorandum filed on July 22, 2005, by the United States Bankruptcy Court for the Eastern District of Tennessee, Northern Division, in Adv. No. 04-3100, styled *James Gibbs and wife, Sharon Gibbs v. Ricky Lynn Susong,* containing findings of fact and conclusions of law in support of a Judgment entered on the same date granting the Plaintiffs a nondischargeable judgment against the defendant Ricky Lynn Susong in the amount of $512,837.48 (Memorandum Opinion).

**\*2** On June 20, 2007, the Debtor filed her Response to Motion for Summary Judgment (Response) and her Response to Statement of Undisputed Facts.FN1

> FN1. The Plaintiffs filed a Supplemental Memorandum of Plaintiffs James and Sharon Gibbs in Support of Motion for Summary Judgment on June 27, 2007; however, this brief was not considered, as it was filed outside the scope of E.D. Tenn. LBR 7056-1.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(I) (West 2006).

## I

The following material facts have been established by the Statement of Undisputed Material Facts and the Response to Statement of Undisputed Material Facts, and/or they have been ascertained from the documents attached as exhibits to the Affidavit of Mark E. Brown .FN2On November 2, 1999, the Plaintiffs entered into a contract with Back to Basics, Inc., a company owned by the Debtor and her

former husband, Ricky Susong, for the construction of a log home on their property in Sevier County, Tennessee, at a price of $531,442.00. *See*EX. 5 at ¶ 3. The parties orally agreed that the construction would be completed in one year, and in March 2000, the Plaintiffs obtained a construction loan with Waterfield Financial. *See*STAT. OF UNDISPUTED MAT. FACTSTS at ¶ 49; EX. 5 at ¶ 3. Back to Basics, Inc. opened a construction account at Sevier County Bank under the name of Back to Basics, Inc. Construction Account for Jim and Sharon Gibbs (Gibbs Construction Account).*See*EX. 1 at ¶ 7; EX. 2 at ¶ 5.

> FN2. Because the Debtor did not file an answer in the Sevier County Lawsuit, and a default judgment was entered, all allegations contained in the Second Amended Complaint filed by the Plaintiffs on August 14, 2003, are deemed admitted. *See*TENN. R. CIV. P. 8.04 ("Averments in a pleading to which a responsive pleading is required are admitted when not denied in the responsive pleading ... [.]").

At the request of the Debtor and/or Ricky Susong, on March 13, 2000, the Plaintiffs deposited $153,632.95 into the Gibbs Construction Account, bringing the balance in the account to $158,625.95. *See*STAT. OF UNDISPUTED MAT. FACTSTS at ¶ 55; EX. 1 at ¶ 9; EX. 2 at ¶ 5. A total of $156,000.00 was withdrawn from the Gibbs Construction Account by the Debtor between March 13, 2000, and May 2, 2000, that was not spent on the Plaintiffs' construction, including $50,000.00 that was paid to McCarter Lumber Company for Back to Basics, Inc.'s outstanding bills. *See*STAT. OF MAT. UNDISPUTED FACTSTS at ¶ 56.

Only the foundation and the basement walls and floor had been completed as of May 8, 2001, which the Plaintiffs found to be defective, and they demanded that all construction be discontinued. *See*STAT. OF UNDISPUTED MAT. FACTSTS at ¶ 61; EX. 5 at ¶¶ 6, 9. The Plaintiffs then undertook completion of the home, including the purchase of a

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in B.R.
Not Reported in B.R., 2007 WL 2042449 (Bkrtcy.E.D.Tenn.)

log package from Tennessee Log Homes for $217,669.00. *See*STAT. OF UNDISPUTED MAT. FACTSTS at ¶ 67.

On July 3, 2003, the Plaintiffs filed a motion in the Sevier County Lawsuit to amend the complaint filed against Ricky Susong on March 1, 2002, alleging breach of contract, fraud, and violations of the Tennessee Consumer Protection Act, in order to add the Debtor as a defendant, to be served by publication. *See*STAT. OF UNDISPUTED MAT. FACTSTS at ¶ 3; EX. 3. In support of the motion, the Plaintiffs alleged the following: (1) that on March 17, 2003, they discovered that $50,000.00 from the Gibbs Construction Account was paid via a check that Ricky Susong claimed was written by the Debtor to McCarter Lumber Company in March 2000, and applied to outstanding bills for Back to Basics, Inc.; (2) that the Debtor was president of Back to Basics, Inc., in March 2000; and (3) that the Plaintiffs were unable to locate the Debtor after diligent efforts, requiring service of process via publication and mailing to a post office box. *See*EX. 3 at ¶¶ 2-5.

*3 The motion was granted on September 2, 2003, and a Second Amended Complaint was filed in the Sevier County Lawsuit on August 14, 2003. *See*STAT. OF UNDISPUTED MAT. FACTSTS at ¶¶ 6-7; EX. 4; EX. 5. In the Second Amended Complaint, the Plaintiffs sought damages in the amount of $296,866.83, pre-judgment interest, treble damages, attorneys' fees and costs, and punitive damages. *See*STAT. OF UNDISPUTED MAT. FACTSTS at ¶ 8; EX. 5. The Second Amended Complaint was sent to the Debtor via certified mail, return receipt requested to the Debtor at P.O. Box 6250, Maryville, Tennessee 37802-6520, on August 13, 2003, and returned with a "Box Closed; Unable to Forward," and the attempted service was filed in the Sevier County Lawsuit on August 23, 2003. *See*STAT. OF UNDISPUTED MAT. FACTSTS at ¶¶ 9-11; EX. 6. The Plaintiffs served the Debtor via publication in *The Daily Times* in Maryville, beginning on September 6, 2003, and ending on Septem-

ber 27, 2003, and an Affidavit of Publication was filed on October 16, 2003. *See*STAT. OF UNDISPUTED MAT. FACTSTS at ¶¶ 12-13; EX. 7.

On December 4, 2003, a default judgment was entered against the Debtor in the Sevier County Lawsuit. *See*STAT. OF UNDISPUTED MAT. FACTSTS at ¶¶ 15-16. On December 12, 2003, the Plaintiffs appeared before the Special Master and offered proof of their damages. *See*STAT. OF UNDISPUTED MAT. FACTSTS at ¶ 70; EX. 15.

The Debtor filed a Motion to Set Aside Default Judgment in the Sevier County Lawsuit on January 8, 2004. *See*STAT. OF UNDISPUTED MAT. FACTSTS at ¶ 17; EX. 9. In support of this motion, the Debtor attached an affidavit stating that she was never personally served with process, that she had been unaware of the service by publication, that she had only been made aware of the default judgment because she was in court on another matter that day, that she acted within the scope of her corporate authority, not individually, in her dealings with the Plaintiffs, and that she never knowingly used funds from the Gibbs Construction Account for other projects. *See*STAT. OF UNDISPUTED MAT. FACTSTS at ¶¶ 18-19; EX. 9.

The Plaintiffs filed a response to the Debtor's Motion to Set Aside Default Judgment on February 2, 2004, arguing that her default was willful, that she had failed to state a meritorious defense, and that they would be unduly prejudiced if her motion were granted, to which the Debtor then filed a reply brief, a proposed unsigned Answer and Affirmative Defenses of Mary Constance Nevels, and a supplemental affidavit on February 5, 2004. *See*STAT. OF UNDISPUTED MAT. FACTSTS at ¶¶ 20-21; EX. 10; EX. 11; EX. 12. The Motion to Set Aside Default Judgment, which was heard on February 6, 2004, was denied pursuant to an Order entered on February 16, 2004, upon a finding that the Debtor actively concealed her location from the Plaintiffs to avoid service of process. *See*STAT. OF UNDISPUTED MAT. FACTSTS at ¶¶ 27-28; EX. 13.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in B.R.
Not Reported in B.R., 2007 WL 2042449 (Bkrtcy.E.D.Tenn.)

**\*4** The Plaintiffs filed a Motion for Judgment on August 29, 2005, asking the state court to order the Special Master to file a report and to enter judgment in their favor. *See* STAT. OF UNDISPUTED MAT. FACTSTS at ¶ 29; EX. 14. On February 10, 2006, the Special Master filed his Report of Special Master setting forth the facts of the case as presented at the December 12, 2003 hearing, and making the following findings and recommendations: (1) that the record established that the

Debtor ... participated in a series of deceptions and misrepresentations calculated to hinder and delay and conceal the real progress on the construction of the Plaintiffs' home ... [and] the defendants while soliciting payments of substantial sums from the Plaintiffs actually diverted large portions of the funds to other purposes";

(2) that "under TCA 66-11-137 the diversion of funds constituted a prima facie evidence of intent to defraud and that the [Debtor] intended to defraud the Plaintiffs," supporting an award of actual damages of $329,283.66; (3) that although the majority of wrongdoing was committed by Mr. Susong, an award of punitive damages of $10,000 .00 against the Debtor was appropriate; (4) that the Debtor violated the Tennessee Consumer Protection Act by making "deceptive and misleading statements," whereby the Plaintiffs were entitled to recovery of their attorneys' fees in the amount of $43,354.58, but declining to award treble damages because the "real culprit" was Mr. Susong; and (5) that the court should enter a total judgment in the amount of $382,638.24 against the Debtor.[FN3]*See* STAT. OF UNDISPUTED MAT. FACTSTS at ¶¶ 31-32, 35; EX. 15 at 6-8.

FN3. The Special Master's Report references that Mr. Susong filed for bankruptcy after the hearing before the Special Master. *See* EX. 15. The record reflects that Mr. Susong filed for Chapter 7 bankruptcy on December 12, 2003, that the Plaintiffs filed an adversary proceeding objecting to his discharge on May 21, 2004, and that after a

four-day trial, Mr. Susong's discharge was denied, and a judgment against Mr. Susong and in favor of the Plaintiffs was entered by the Bankruptcy Court in the amount of $512,837.48. *See* EX. 19.

On February 22, 2006, the Chancellor entered an Order in the Sevier County Lawsuit adopting the Special Master's findings and awarded the Plaintiffs a judgment against the Debtor in the amount of $545,006.30, representing actual damages of $329,283.66, punitive damages of $10,000.00, prejudgment interest of $162,368.06, and attorneys' fees and costs of $43,354.58. *See* STAT. OF UNDISPUTED MAT. FACTSTS at ¶ 36; EX. 16. Upon a motion to amend filed by the Plaintiffs on March 31, 2006, the court entered an Amended Order on the same date identical in all respects to the February 22, 2006 Order but with an added provision taxing costs to the Debtor. *See* STAT. OF UNDISPUTED MAT. FACTSTS at ¶¶ 38, 40; EX. 17; EX. 18. The Debtor did not file written objections to the Special Master's Report nor did she file a notice of appeal of the Judgment. *See* STAT. OF UNDISPUTED MAT. FACTSTS at ¶ 71.

The Debtor filed the Voluntary Petition commencing her Chapter 7 bankruptcy case on June 13, 2006, and the Plaintiffs timely filed this adversary proceeding on September 18, 2006. With respect to the Motion for Summary Judgment, the Plaintiffs argue that there are no genuine issues of material fact because the Judgment, which is based upon the unchallenged findings of the Special Master, is final, and under the doctrines of res judicata and/or collateral estoppel, all issues have been previously resolved. The Debtor opposes the Motion for Summary Judgment on the grounds that she was never properly served with the Sevier County Lawsuit, and therefore, the Judgment is void and cannot be binding and final against her.

## II

**\*5** Summary judgment is appropriate "if the plead-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in B.R.                                                                  Page 5
Not Reported in B.R., 2007 WL 2042449 (Bkrtcy.E.D.Tenn.)

ings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."FED.R.CIV.P. 56(c) (applicable in adversary proceedings by virtue of Rule 7056 of the Federal Rules of Bankruptcy Procedure). When considering a motion for summary judgment, the court does not weigh the evidence to determine the truth of the matter asserted, but simply determines whether a genuine issue for trial exists. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2510 (1986).

The party seeking summary judgment bears the initial burden of proving that there are no genuine issues of material fact, thus entitling it to judgment as a matter of law. *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir.2001). The burden then shifts to the non-moving party to produce specific facts showing a genuine issue for trial, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S.Ct. 1348, 1356 (1986), by citing specific evidence and not merely relying upon allegations contained in the pleadings. *Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir.2000). The facts and all resulting inferences are viewed in a light most favorable to the non-moving party, *Matsushita*, 106 S.Ct. at 1356, and the court will decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."*Anderson*, 106 S.Ct. at 2512. "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."*Anderson*, 106 S.Ct. at 2510.

Based upon the facts and record presented, the court finds that there are no genuine issues of material fact, and the Plaintiffs are entitled to judgment as a matter of law.

### III

The Plaintiffs argue that the Judgment in the Sevier County Lawsuit is final and must be honored by the bankruptcy court pursuant to the doctrines of res judicata and/or collateral estoppel, while the Debtor argues that the Judgment is a default judgment, is void, and is not entitled to res judicata and/or collateral estoppel effect. "The doctrine of res judicata, or claim preclusion, provides that a final judgment on the merits of an action precludes the 'parties or their privies from re-litigating issues that were or could have been raised' in a prior action."*Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir.1995) (*quoting Federated Dep't Stores, Inc. v. Moitie*, 101 S.Ct. 2424, 2428 (1981)). Res judicata extinguishes "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose."*J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 215 (6th Cir.1996) (quoting RESTATEMENT (SECOND) JUDGMENTS § 24 (1982)). The Sixth Circuit Court of Appeals has held that res judicata is based upon the following four elements:

*6 (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Kane*, 71 F.3d at 560 (citing *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir.1992)). However, because the federal courts have exclusive jurisdiction over actions to determine nondischargeability under § 523(a)(2), (4), or (6), a state court judgment may not be given res judicata effect. *See Sill v. Sweeney (In re Sweeney)*, 276 B.R. 186,195-96 (B.A.P. 6th Cir.2002).

Collateral estoppel, or issue preclusion, derives from the Full Faith and Credit Statute, which provides that "judicial proceedings ... [of any State] shall have the same full faith and credit in every court within the United States ... as they have by

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

law or usage in the courts of such State....”28 U.S.C.A. § 1738 (2006). Accordingly, “a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.”*Migra v. Warren City Sch. Dist. Bd. of Educ.,* 104 S.Ct. 892, 896 (1984).“Bankruptcy courts' exclusive jurisdiction over dischargeability issues does not alter this rule.”*Rally Hill Prods., Inc. v. Bursack (In re Bursack),* 65 F.3d 51, 53 (6th Cir.1995). If a claim or issue would be barred under state law, and no exception to § 1738 applies, the judgment is given preclusive effect.*Marrese v. Am. Acad. of Orthopaedic Surgeons,* 105 S.Ct. 1327, 1335 (1985); *Bay Area Factors v. Calvert (In re Calvert),* 105 F.3d 315, 317 (6th Cir.1997).

Under Tennessee state law, “collateral estoppel bars relitigation of an issue if it was raised in an earlier case between the same parties, actually litigated, and necessary to the judgment of the earlier case.”*Bursack,* 65 F.3d 51, 54 (6th Cir.1995) (citing *Massengill v. Scott,* 738 S.W.2d 629, 632 (Tenn.1987)).“[M]aterial facts or questions, which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and ... such facts or questions become res judicata and may not again be litigated in a subsequent action between the same parties.”*Booth v. Kirk,* 381 S.W.2d 312, 315 (Tenn.Ct.App.1963) (quoting *Cantrell v. Burnett & Henderson Co.,* 216 S.W.2d 307, 309 (Tenn.1948)).

Application of collateral estoppel requires a demonstration that “1) the judgment in the prior case was final and concluded the rights of the party against whom the defense is asserted, and 2) both cases involve the same parties, the same cause of action, or identical issues.”*Richardson v. Tenn. Bd. of Dentistry,* 913 S .W.2d 446, 459 (Tenn.1995).

In order to invoke the doctrine successfully, the party must demonstrate (1) that the issue sought to be precluded is identical to the issue decided in the earlier suit; (2) that the issue sought to be pre-

cluded was actually litigated and decided on its merits in the earlier suit; (3) that the judgment in the earlier suit has become final; (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier suit; and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier suit to litigate the issue now sought to be precluded.

*7 *Am. Indus. Servs., Inc. v. Howard,* No. M2003-01656-COA-R3-CV, 2000 Tenn.App. LEX-IS 261, at *14, 2006 WL 1082833, at *5 (Tenn.Ct.App. Apr. 25, 2006) (citing *Trinity Indus., Inc. v. McKinnon Bridge Co.,* 147 S.W.3d 225, 232-33 (Tenn.Ct.App.2003)).

Of these requirements, there is no dispute that the Judgment issued on March 31, 2006, was not appealed by the Debtor and is, therefore, a final judgment. *See*STMT. OF UNDISPUTED MAT. FACTS,, at ¶¶ 36, 40, 71; EX. 1, at ¶ 26; EX. 2, at ¶ 18. There is also no dispute that the parties are the same. *See generally*EX. 1, EX. 2; EX. 15; EX. 18. Accordingly, the court must determine if the remaining requirements have been satisfied.

### A

In order to make a determination as to the applicability of collateral estoppel, the court must first analyze the issues pled in this adversary proceeding in comparison with those pled in the Sevier County Lawsuit.

As previously discussed, the Sevier County Lawsuit is based upon the breach of contract between the parties for the construction of the Plaintiffs' home, in which the Plaintiffs argued that the Debtor and Ricky Susong engaged in fraud, deceptive practices in violation of the Tennessee Consumer Protection Act, and misappropriation of funds. In this adversary proceeding, citing the same factual basis as in the Sevier County Lawsuit, the Plaintiffs seek a determination that the Judgment is nondis-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

chargeable under 11 U.S.C. § 523, which, as is alleged in this adversary proceeding, provides as follows:

(a) A discharge under section 727 [ [FN4] ... of this title does not discharge an individual debtor from any debt-

> FN4. Chapter 7 debtors receive a discharge of pre-petition debts, "[e]xcept as provided in section 523 of this title[.]"11 U.S.C. § 727(b) (2005). This accomplishes the goals of Chapter 7 to relieve "honest but unfortunate" debtors of their debts and allow them a "fresh start" through this discharge. *Buckeye Retirement, LLC v. Heil (In re Heil),* 289 B.R. 897, 901 (Bankr.E.D .Tenn.2003) (quoting *In re Krohn,* 886 F.2d 123, 125 (6th Cir.1989) (citing *Local Loan Co. v. Hunt,* 54 S.Ct. 695, 699 (1934))). The Order granting the Debtor's discharge was entered on September 25, 2006.

....

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

....

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; [or]

....

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523 (2005).[FN5]

> FN5. Because § 523(a) is construed strictly against the moving party and liberally in favor of the non-moving party, the Plaintiffs bear the burden of proving each elements necessary for a determination of nondischargeability by a preponderance of the evidence. *Grogan v. Garner,* 111 S.Ct. 654, 661 (1991); *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert),* 141 F.3d 277, 281 (6th Cir.1998).

**1**

To satisfy § 523(a)(2)(A), the Plaintiffs must prove that the Debtor obtained money, property, or services through material misrepresentations that she knew were false or that she made with gross recklessness, that the Debtor intended to deceive the Plaintiffs, that the Plaintiffs justifiably relied on the Debtor's false representations, and their reliance was the proximate cause of their losses. *Haney v. Copeland (In re Copeland),* 291 B.R. 740, 760 (Bankr.E.D.Tenn.2003) (citing *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert),* 141 F.3d 277, 280 (6th Cir.1998)).

First, the record must evidence that the Debtor engaged in "somewhat blameworthy" conduct, although her intent may be "inferred as a matter of fact" based on the totality of the circumstances. *Copeland,* 291 B.R. at 759 (citing *Commercial Bank & Trust Co. v. McCoy (In re McCoy),* 269 B.R. 193, 198 (Bankr.W.D.Tenn.2001)). Material misrepresentations, omissions, and actual fraud all fall within the scope of § 523(a)(2)(A).*Copeland,* 291 B.R. at 759;*see also Mellon Bank, N.A. v. Vitanovich (In re Vitanovich),* 259 B.R. 873, 877 (B.A.P. 6th Cir.2001) ("Actual fraud as used in 11 U.S.C. § 523(a)(2)(A) is not limited to misrepresentations and misleading omissions.").

*8 Intent to deceive requires proof that the Debtor made false representations that she knew or should have known would convince the Plaintiffs to provide property or services. *Copeland,* 291 B .R. at 765-66." 'Fraudulent intent requires an actual in-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

tent to mislead, which is more than mere negligence.... A 'dumb but honest' [debtor] does not satisfy the test.' " *Copeland,* 291 B .R. at 766 (quoting *Palmacci v. Umpierrez,* 121 F.3d 781, 788 (1st Cir.1997)). Fraudulent intent may be inferred by examining the Debtor's conduct to determine if she presented the Plaintiff with " 'a picture of deceptive conduct ... indicat[ing] an intent to deceive.' " *Copeland,* 291 B.R. at 766 (quoting *Wolf v. McGuire (In re McGuire),* 284 B.R. 481, 492 (Bankr.D.Colo.2002)).

Finally, the Plaintiffs must prove that they actually relied upon the Debtor's representations and that, based upon the facts and circumstances known to them at the time, such reliance was justifiable. *Copeland,* 291 B.R. at 767. Justifiable reliance can be found even if the Plaintiffs " 'might have ascertained the falsity of the representation had [it] made an investigation.' " *Copeland,* 291 B.R. at 767 (quoting *McCoy,* 269 B.R. at 198).

The Report of Special Master, which was adopted by the Chancellor in the Judgment, expressly states that "[t]he individual Defendant as well as the corporation through the individual defendants participated in a series of deceptions and misrepresentations calculated to hinder and delay and conceal the real progress on the construction of the Plaintiffs' home" and that "under TCA 66-11-137 the diversion of the [$50,000.00] funds constituted a prima facie evidence of intent to defraud[.]"EX. 15, at 6-7.

2

The Plaintiffs also assert that the Judgment is nondischargeable under § 523(a)(4), which applies to debts obtained by embezzlement, larceny, or through fraud or defalcation while acting in a fiduciary capacity. For the purposes of § 523(a)(4), embezzlement is "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come ."*Brady v. McAllister (In re Brady),* 101 F.3d

1165,1172-73 (6th Cir.1996). Larceny under § 523(a)(4) is proved if the debtor wrongfully and with fraudulent intent takes property from its rightful owner, *see Great Am. Ins. Co. v. O'Brien (In re O'Brien),* 154 B.R. 480, 483 (Bankr.W.D.Tenn.1993) (citing *Kaye v.. Rose (In re Rose),* 934 F.2d 901, 903 (7th Cir.1991)), and differs from embezzlement because the embezzler's initial acquisition of the property at issue is lawful. *Aristocrat Lakewood Nursing Home v. Dryja (In re Dryja),* 259 B.R. 629, 632 (Bankr.N.D.Ohio 2001). Defalcation under § 523(a)(4) requires proof of: "1) a fiduciary relationship; 2) breach of that fiduciary relationship; and 3) a resulting loss."*R.E. Am., Inc. v. Garver (In re Garver),* 116 F.3d 176, 178 (6th Cir.1997). In order to prove a fiduciary relationship, "the debtor must hold funds in trust for a third party[, so] ... the defalcation provision of § 523(a)(4) is limited to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor."*Garver,* 116 F.3d at 179-80.

*9 Here, there was a trust account, namely the Gibbs Construction Account, into which the Plaintiffs deposited $158,625.95 for use only on their construction. The record reflects, however, that those funds were not used for their construction but were, instead, used by the Debtor to pay outstanding invoices of Back to Basics, Inc., unrelated to the Plaintiffs' construction. The Special Master found that this diversion of funds constituted prima facie evidence of an intent to defraud, citing Tennessee Code Annotated section 66-11-137 (2004), which in turn ties into section 66-11-140, stating that "use of [said] proceeds ... for any purpose other than either payment pursuant to written agreement between the parties or in accordance with the allocation of costs and profits under generally accepted accounting principles for construction projects shall be prima facie evidence of intent to defraud."TENN.CODE ANN. § 66-11-140 (2004).

3

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Finally, the Plaintiffs aver the applicability of § 523(a)(6) for a "willful and malicious" injury. In order to be successful under this subsection, they must prove, by a preponderance of the evidence, the existence of "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."*Kawaauhau v. Geiger*, 118 S.Ct. 974, 977 (1998); *Grogan v. Garner*, 111 S.Ct. 645, 661 (1991) (burden of proof as to nondischargeability actions). In other words, the Debtor must have either desired to cause the consequences of her actions, or she believed with reasonable certainty that such consequences would occur. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir.1999); *Guthrie v. Kokenge (In re Kokenge)*, 279 B.R. 541, 543 (Bankr.E.D.Tenn.2002). In the Sixth Circuit, "unless the actor desires to cause consequences of his act, or ... believes that the consequences are substantially certain to result from it, he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)."*Markowitz*, 190 F.3d at 464;*Kokenge*, 279 B.R. at 543 (citations omitted).

"An act of conversion may constitute willful and malicious injury depending on whether or not the debtor intended to cause the harm or was substantially certain that such harm would occur."*Sweeney v. Lombardi (In re Lombardi)*, 263 B.R. 848, 853 (Bankr.S.D.Ohio 2001). Under Tennessee law, conversion is an intentional tort and requires proof that a party appropriated another's property for his own use, by exercising dominion and control in exclusion or defiance of the owner's right to use and benefit from the property. *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn.Ct.App.1977).

As stated previously, the Debtor and Ricky Susong used funds belonging to the Plaintiffs, which were to be used solely for the construction of their home, to pay outstanding invoices owed by Back to Basics, Inc. Clearly, the improper use of those funds is a conversion under Tennessee law, and thus, falls within the scope of § 523(a)(6).

*10 Based upon the foregoing analysis, the court finds that the mutuality requirements for applying collateral estoppel are met. The parties and issues in this adversary proceeding are exactly the same as those in the Sevier County Lawsuit. In both actions, the Plaintiffs, relying upon precisely the same facts, argued that the Debtor, along with Ricky Susong, fraudulently misrepresented the status of the construction on their log home and misappropriated funds from the Gibbs Construction Account for their own use by spending the Plaintiffs' construction funds to pay outstanding invoices owed by Back to Basics, Inc.

**B**

Next, the court must determine if these issues were actually litigated, were decided on their merits, and whether the Debtor had a full and fair opportunity to litigate them. There is no dispute that the Judgment is a default judgment entered against the Debtor who did not file an answer in the Sevier County Lawsuit. *See*STMT. OF UNDISPUTED MAT. FACTS,, at ¶¶ 15, 36, 40, 70, 71. Nevertheless, under Tennessee law, it matters not since "[e]ven a default judgment satisfies Tennessee's 'actually litigated' requirement."*Bursack*, 65 F.3d at 54. Furthermore, the Sixth Circuit has held that nothing in the Bankruptcy Code or its legislative history "reveal[s] anything that would suggest that Congress intended to exclude default judgments obtained in state court from the applicability of the Full Faith and Credit Statute in dischargeability proceedings in bankruptcy court."*Calvert*, 105 F.3d at 320-21.

The Plaintiffs presented evidence to the Special Master at the December 12, 2003 hearing, after which he made recommendations to the court. The Judgment was then entered in the Sevier County Lawsuit on March 31, 2006, adopting the Special Master's findings. The Debtor did not appeal the Judgment. Additionally, although she did not file an answer or otherwise appear to defend the Sevier County Lawsuit, the Debtor did file a motion to set

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in B.R.                                                                                    Page 10
Not Reported in B.R., 2007 WL 2042449 (Bkrtcy.E.D.Tenn.)

it aside, arguing that the Judgment was void be-
cause she was not properly served with process.
After a hearing, the court determined that her argu-
ments had no merit, that the Plaintiffs' counsel ex-
ercised due diligence in attempting to ascertain her
whereabouts for personal service, that she willfully
concealed her whereabouts, and that service by
publication was proper. *See* EX. 13.

In a recent case with similar facts, the Tennessee
Court of Appeals affirmed the dismissal of a law-
suit filed by the plaintiffs based upon the collateral
estoppel effect of a default judgment entered by the
General Sessions Court for Marion County, Ten-
nessee. *See Morrison v. Citizen State Bank,* No.
M2004-00263-COA-R3-CV, 2005 Tenn.App. LEX-
IS 597, 2005 WL 2295552 (Tenn.Ct.App. Sept. 20,
2005). In *Morrison,* the bank originally filed a civil
warrant against the Morrisons for a deficiency judg-
ment on six loans and to recover a vehicle, alleging
that the loans were cross-collateralized, and default
on one rendered them all in default. *Morrison,* 2005
Tenn.App. LEXIS 597, at *2-3, 2005 WL 2295552,
at * 1. The Morrisons did not respond or appear for
the hearing, and a default judgment was entered
against them. *Morrison,* 2005 Tenn.App. LEXIS
597, at *4, 2005 WL 2295552, at * 1. Following
dismissal of an untimely appeal, the Morrisons filed
an action alleging that the bank defrauded them
and/or allowed someone to forge their signatures on
four of the six loans and argued that the loans were
not cross-collateralized. *Morrison,* 2005 Tenn.App.
LEXIS 597, at *4-5, 2005 WL 2295552, at *1-2.
The civil action was dismissed on summary judg-
ment in favor of the bank on the basis of res ju-
dicata, and the Morrisons appealed. *Morrison,* 2005
Tenn.App. LEXIS 597, at *6, 2005 WL 2295552, at
*2.

*11 The court of appeals found that, notwithstand-
ing the Morrisons' failure to defend the general ses-
sions warrant, the issues of cross-collateralization
and the validity of all six notes were decided when
the general sessions court rendered a judgment in
favor of the bank. *Morrison,* 2005 Tenn.App. LEX-

IS 597, at *10-11, 2005 WL 2295552, at *3. Hold-
ing that the Morrisons could have raised the cross-
collateralization and forgery issues in defense of
the civil warrant, the court of appeals determined
that the Morrisons were now estopped from raising
the issues in a separate suit, because the default
judgment was "conclusive 'to all matters which
might have legally been put in issue and determ-
ined....' " *Morrison,* 2005 Tenn.App. LEXIS 597, at
* 13, 2005 WL 2295552, at *4 (quoting *Nat'l Cor-
dova Corp. v. City of Memphis,* 380 S.W. 793
(Tenn.1964)).[FN6]

> FN6. As in this case, the Morrisons argued
> on appeal that they were not properly
> served with notice, to which the court of
> appeals stated "[t]his may be so, and if
> true, would have been grounds for appeal-
> ing the default judgment[, but h]e failed to
> timely file his appeal, however, and thus
> the issue of proper service has also been
> conclusively        determined        against
> him." *Morrison,* 2005 Tenn.App. LEXIS
> 597, at *13 n. 6, 2005 WL 2295552, at *4
> n. 6.

As confirmed by the foregoing authority, the issues
of fraud, misappropriation, and sufficiency of ser-
vice of process were fully litigated, and therefore,
collateral estoppel applies not only to the Judgment,
but also with respect to whether or not the Debtor
was properly served in the Sevier County
Lawsuit.[FN7]

> FN7. Moreover, pursuant to the *Rooker-
> Feldman* doctrine, lower federal courts
> may not sit in review of state court judg-
> ments, *see Sill v. Sweeney (In re Sweeney),*
> 276 B.R. 186, 195 (B.A.P. 6th Cir.2002),
> and precludes "cases brought by state-
> court losers complaining of injuries caused
> by state-court judgments rendered before
> the district court proceedings commenced
> and inviting district court review and rejec-
> tion of those judgments." *Exxon Mobil
> Corp. v. Saudi Basic Indus. Corp.,* 125

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in B.R.                                                    Page 11
Not Reported in B.R., 2007 WL 2042449 (Bkrtcy.E.D.Tenn.)

S.Ct. 1517, 1521-22 (2005). In short, as re-
cently stated by the Sixth Circuit,

the federal district courts lack jurisdic-
tion over two types of cases originating
in state court: (1) cases where appellate
remedies have been exhausted in state
court and issues raised and decided in
the state courts are presented to the fed-
eral district courts for reconsideration;
and (2) cases where the federal claims
asserted turn so directly on state court
judgments that the federal district courts
must review the state court judgments to
resolve the federal claims.

*Johnson v. Ohio Sup.Ct.,* 156 Fed. Appx.
779, 782, 2005 U.S.App. LEXIS 25306,
at *11, 2005 WL 3113513, at *4 (6th
Cir. Nov. 18, 2005). The Debtor's argu-
ment concerning service of process falls
squarely into the second category and is
thus prohibited.

### IV

Because the Judgment is final and meets all of the
other requirements necessary for the application of
collateral estoppel, the Debtor may not re-litigate
the issues raised by the Plaintiffs in this adversary
proceeding since they have already been decided in
the Sevier County Lawsuit. Accordingly, the court
finds that the Plaintiffs have met their burden of
proof with respect to a determination of nondis-
chargeability under 11 U.S.C. § 523(a)(2)(A), (4),
and (6), and the Judgment entered by the Chancery
Court for Sevier County, Tennessee, on March 31,
2006, in favor of the Plaintiffs and against the
Debtor in the amount of $545,006.30, is nondis-
chargeable.

An order consistent with this Memorandum will be
entered.

Bkrtcy.E.D.Tenn.,2007.
In re Nevels

Not Reported in B.R., 2007 WL 2042449
(Bkrtcy.E.D.Tenn.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

## CERTIFICATE OF SERVICE

I, Daniel Shmikler, an attorney, hereby certify that on September 8, 2008, I electronically filed **Defendant's Response To Plaintiff's Sur-Reply Regarding Defendant's Motion to Vacate Order Of Default And Quash Service** with the Clerk of Court using the CM/ECF system which sent notification of such filing to the following persons listed below:

> Gary I. Blackman, Esq.
> James G. Martignon, Esq.
> Levenfeld Pearlstein, P.C.
> 2 North LaSalle Street
> Suite 1300
> Chicago, Illinois  60602

/s/Daniel A. Shmikler_____
Daniel A. Shmikler